**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**STEVE PARDOE,**

                  **Plaintiff,**           **3:06-cv-1007**
                                             **(GLS)**

       **v.**

**JO ANNE B. BARNHART,**
Commissioner of Social Security,

                  **Defendant.**
_____

**APPEARANCES:**             **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Office of Jonathan P. Foster      JONATHAN P. FOSTER, ESQ.
407 South Main Street
Athens, PA 18810

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN     MARIA P. FRAGASSI
United States Attorney                  SANTANGELO
100 South Clinton Street             Special Assistant U.S. Attorney
Syracuse, NY 13261

BARBARA L. SPIVAK
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**District Court Judge**

**<u>MEMORANDUM-DECISION AND ORDER</u>**

## I. <u>Introduction</u>

Plaintiff Steve Pardoe challenges the Commissioner of Social Security's denial of disability insurance benefits (DIB) and seeks judicial review under 42 U.S.C. § 405(g).  (*See* Compl., Dkt. No. 1.)  After reviewing the administrative record and carefully considering the arguments, the court affirms the Commissioner's decision and dismisses Pardoe's complaint.

## II. <u>Background</u>

On May 20, 2003, Pardoe filed an application for DIB under the Social Security Act (the Act), alleging disability beginning on May 3, 2003, based on a neck injury and degenerative disc disease that resulted from a car accident that occurred on May 3, 2003.  (Tr.[1] at 15-16; *see also* Pl. Br. at 1, Dkt. No. 6.)  After his application was denied, Pardoe requested a hearing before an Administrative Law Judge (ALJ), which was held on June 7, 2005.  (Tr. at 15-20.)  On July 28, 2005, the ALJ issued a decision denying the requested benefits, which became the Commissioner's final decision upon the Social Security Administration Appeals Council's denial

---

[1]"(Tr. )" refers to the page of the Administrative Transcript in this case.

2

of review.  (Tr. at 5-7.)

Pardoe commenced the present action by filing a complaint on August 21, 2006, seeking review of the Commissioner's determination. (Dkt. No. 1.)  The Commissioner filed an answer and a certified copy of the administrative transcript.  (Dkt. Nos. 5, 6.)  Each party, seeking judgment on the pleadings, filed a brief.  (Dkt. Nos. 11, 12.)

### III. <u>Contentions</u>

Pardoe contends that the Commissioner's decision is not supported by substantial evidence or the appropriate legal standards.  Specifically, Pardoe claims that the ALJ: (1) failed to follow the treating physician rule or otherwise failed to afford the proper weight to the medical opinions on record; (2) failed to consider Pardoe's work history and as a result failed to accord the appropriate level of credibility to his testimony about his work capabilities; and (3) failed to present hypothetical questions to the vocational expert (VE) that completely accounted for Pardoe's impairments and limitations.  (*See generally* Pl. Br., Dkt. No. 11.)  In addition, Pardoe contends that the Appeals Council failed to properly consider the newly offered medical evidence regarding Pardoe's heart attack and depression. (*See id.* at 13-15.)  The Commissioner counters that substantial evidence

supports the ALJ's decision.

## IV. <u>Facts</u>

The evidence in this case is undisputed and the court adopts the parties' factual recitations.  (*See* Pl. Br. at 1-7, Dkt. No. 11; Def. Br. at 1-7, Dkt. No. 12.)

## V. <u>Discussion</u>

### A. <u>Standard of Review</u>

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g) is well established and will not be repeated here.  For a full discussion of the standard and the five-step process used by the Commissioner in evaluating whether a claimant is disabled under the Act, the court refers the parties to its previous opinion in *Christiana v. Comm'r Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

### B. <u>Analysis</u>

### 1. **Treating Physician Rule**

Pardoe first argues that the ALJ failed to afford appropriate weight to the opinions of his treating physicians, Drs. James S. Harrop, Andrew J. Morpurgo, Heidi Wilson, Robert Grabowski, and Albert B. Kochersperger.

4

(*See* Pl. Br. at 7-11, Dkt. No. 11.)  This argument must be rejected as it is wholly contradicted by the record.

Generally, the opinion of a treating physician is given controlling weight if it is based upon well-supported, medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.  *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see also Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir. 1998). An ALJ may not arbitrarily substitute his own judgment for a competent medical opinion.  *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). Where controlling weight is not given to the treating physician's opinion, the ALJ must assess several factors to determine how much weight to give the opinion, including: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination by the treating physician for the conditions in question; (3) the medical evidence and explanations provided in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the qualifications of the treating physician; and (6) other relevant factors tending to support or contradict the opinion.  *See* 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).

The "ultimate finding of whether a claimant is disabled and cannot

work [is] reserved to the Commissioner." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).  "[T]he Social Security Administration considers the data that physicians provide but draws its own conclusions ...." *Snell*, 177 F.3d at 133.   Where the evidence of record includes medical source opinions that are inconsistent with other evidence or are internally inconsistent, the ALJ must weigh all of the evidence and make a disability determination based on the totality of that evidence.  *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Upon review of the ALJ's decision and the related medical evidence and opinions, it is clear that the ALJ gave controlling weight to Pardoe's treating physicians where applicable and appropriate.

Following his May 3, 2003 car accident, Pardoe underwent anterior cervical fusion and posterior cervical fusion surgeries with Dr. Harrop.  (Tr. at 120-21.)  Dr. Harrop performed a post-surgery Employability Assessment on May 7, 2003, after which he opined that Pardoe was temporarily disabled for twelve months or more based on Pardoe's C5 spinal cord injury, which was classified "D" on the ASIA Impairment Scale, meaning Pardoe's motor function remained and a majority of his key

muscles maintained a muscle grade greater than or equal to three.  (Tr. at 172-74.)  However, Dr. Harrop never saw Pardoe again or performed any follow-up evaluations after May 10, 2003.  Moreover, there are no findings, notes, or other evidence supporting his opinion that Pardoe would be temporarily disabled in excess of a year.  (Tr. at 120-21, 140-42, 148-51, 163-69.)  Therefore, while the ALJ relied on Dr. Harrop's treatment in finding Pardoe's impairment "severe," he was not required, nor would he have been justified, in giving controlling weight to Dr. Harrop's conclusory opinion as to the ultimate determination of disability.  *See Snell*, 177 F.3d at 133 ("A treating physician's statement that the claimant is disabled cannot itself be determinative.").

Dr. Morpurgo's notes are equally scant, since they seem to be based on a single examination of Pardoe on May 22, 2003.  (Tr. at 175-76.)  In essence, Dr. Morpurgo found that Pardoe's sensation and muscle strength in the upper extremities was slightly diminished, while the muscle strength in his lower extremities was generally normal.  (Tr. at 176.)  Dr. Morpurgo also found Pardoe able to maintain his balance, climb stairs, and ambulate and move in and out of a chair without assistance.  (Tr. at 175-76.)  To decrease Pardoe's pain, Dr. Morpurgo's prescribed Celebrex, Robaxin, and

hydrocodone, and Elavil for depression.  (Tr. at 176.)  And Dr. Morpurgo

recommended that Pardoe receive outpatient physical and occupational

therapy to increase his arm strength.  (*See id.*)  This is the extent of Dr.

Morpurgo's findings.  There are no further findings or discussions regarding

Pardoe's alleged pain, symptoms, or restrictions.  To the extent that Dr.

Morpurgo's examination notes could have aided the ALJ in making his

determination, the court is satisfied that sufficient weight was given to those

notes.  (Tr. at 16.)  It is also noteworthy, as the Commissioner points out,

(*see* Def. Br. at 12, Dkt. No. 12), that there is no evidence on record

demonstrating that Pardoe ever actually sought or received the type of

therapy recommended by Dr. Morpurgo.

Dr. Kochersperger also appears to have interacted with Pardoe on a

very limited basis.  (Tr. at 196-201.)  The record is unclear whether Dr.

Kochersperger evaluated Pardoe once or twice between June 23 and July

3, 2003.  Regardless, his findings as to Pardoe's sensation and muscle

strength mirrored Dr. Morpurgo's: improved but still diminished muscle

strength in the upper extremities, with some numbness; discomfort in the

neck; and decreased sensation in the upper extremities.  (Tr. at 197.)

Despite being unable to examine Pardoe's neck motion due to his full-time

8

cervical collar, Dr. Kochersperger opined that Pardoe had "somewhat coarse" fine motor functions; a gross grip of twenty pounds of force in both his right and left hands; the ability to walk five to ten minutes; and the ability to lift five pounds or less.  (Tr. at 197-98.)  Finding the presence of neck pain, Dr. Kochersperger listed Pardoe's pain medications to include hydrocodone, Robaxin, Celebrex, and Neurontin, as well as Amitriptyline, an antidepressant.  (Tr. at 197, 201.)  Lastly, Pardoe's cervical vertebrae were found to be normal in height and alignment, with no significant changes.  (Tr. at 201.)  Dr. Kochersperger's findings, which are bounded by the abbreviated period of treatment (as is the case with the majority of the physicians on record), are fully consistent with the ALJ's determination, particularly since the ALJ expressly relied on them.

Dr. Grabowski appears to be the only physician on record who met with Pardoe on a repeated basis.  (Tr. at 188, 191-92, 215-233.)  Following the accident, Dr. Grabowski met with Pardoe on July 2, November 25, and December 10, 2003, and September 3, 2004.  The notes from these meetings show that Pardoe had continued complaints of neck pain, with some tenderness around the cervical spine, and that Dr. Grabowski refilled or increased the dosage of Pardoe's prescriptions in an attempt to treat his

9

chronic neck pain.  (Tr. at 188, 215, 217, 219.)  These notes were only pertinent insofar as they allowed the ALJ to assess Pardoe's pain.  (Tr. at 16-18.)

Pardoe's argument as to the weight accorded Dr. Wilson's opinion is also unconvincing.  Like Drs. Morpurgo and Kochersperger, Dr. Wilson seems to have examined Pardoe only once, on February 7, 2005.  (Tr. at 208-09.)  As a result of that examination, and in response to Pardoe's complaints of pain, Dr. Wilson prescribed hydrocodone, Elavil, Skelaxin, Celebrex, and Ultracet.  (Tr. at 208.)  While she did not perform another examination of Pardoe, Dr. Wilson subsequently met with Pardoe on March 29, 2005, in order to refill his prescriptions before he entered a halfway house due to a DWI infraction.  (*See id.*)  According to the notes from this meeting, Dr. Wilson also talked to Pardoe about attending an employment assessment and job search workshop, but Pardoe stated that he was not interested in an appointment to the workshop.  (*See id.*)  In light of Dr. Wilson's minimal interaction and cursory treatment notes, the court is hard pressed to find any meaningful inconsistencies between the ALJ's decision and Dr. Wilson's opinion.  In fact, the court is unable to identify how these notes could have been anything but nominally helpful to the ALJ's

assessment of Pardoe's pain and other symptoms.

Ultimately, Pardoe seems to argue that his subjective complaints of pain and the pain relief medication he was prescribed by his treating physicians demonstrate that his symptoms and pain rendered him disabled.  Such a conclusion is neither legally justified nor supported by the objective medical evidence on record.  Rather, the overwhelming evidence—including the fact that Pardoe has received follow-up medical care with striking irregularity—reinforces the ALJ's conclusion that Pardoe "has required very little medical attention after his surgery and appears to have recovered without complication." (Tr. at 17.)  Moreover, the record is rich with inconsistencies and questions going to Pardoe's credibility, which the ALJ outlined in detail.  Accordingly, the court has no reason to second guess the ALJ's well-founded and fully supported assessments of Pardoe's credibility or the weight to be accorded his treating physicians.

## 2. Work History

Pardoe next contends that by failing to properly address his work history, the ALJ did not accord sufficient credibility to Pardoe's claims that he is presently unable to work.  (*See* Pl. Br. at 11-12, Dkt. No. 11.)  This claim is unfounded.

The regulations provide that the Commissioner "will consider all of the evidence presented, including information about [the claimant's] prior work record" in assessing the credibility of the claimant's subjective complaints and symptomatology.  20 C.F.R. 416.929(c)(3).  To this end, "ALJs are specifically instructed that credibility determinations should take account of 'prior work record.'"  *Schaal*, 134 F.3d at 502 (quoting Social Security Ruling (SSR) 96-7p, 61 Fed. Reg. 34,483, at 34,486 (S.S.A. July 2, 1996)).  Both good work history and poor work history may be probative of credibility.  *See id.*  Ultimately though, "a consideration of work history must be undertaken with great care," and with an awareness that it is just "one of many factors that the ALJ is instructed to consider in weighing the credibility of claimant testimony."  *Id.*

As already discussed, Pardoe's credibility is quite suspect. Unfortunately, his work history does not make it any less so.  Rather, as highlighted by the ALJ, "[h]is earnings record ... shows only sporadic employment."  (Tr. at 18.)  This finding is corroborated by both his own testimony, (Tr. at 77, 301), and the documentary evidence regarding his earnings from 1972 to 2002, (Tr. at 62).  In addition, the notes from Dr. Wilson and from Shirley Glann, F.N.P., indicate that Pardoe consistently

refused to attend an employment assessment and job search workshop,

stating that he was "not employable," but without having any actual medical

or documentary support for such an assertion.  (Tr. at 208, 211.)

It is clear that the ALJ adequately considered Pardoe's work history

when making his determinations.  It is equally apparent that Pardoe's work

history and credibility do not support his subjective contentions.

## 3.    Vocational Expert

Pardoe further claims that the ALJ presented incomplete hypothetical

questions to the VE that did not encompass all of Pardoe's impairments,

including the extent of his pain medications, depression, and limited ability

to walk five to ten minutes or lift five pounds or less.  (*See* Pl. Br. at 12-13,

Dkt. No. 11.)  However, because the questions posed to the VE were both

complete and extensive, the ALJ was justified in relying on the VE's

answers in making his findings.

If a claimant is not capable of continuing his prior type of work, the

ALJ must determine whether the claimant can do any other, less

demanding work existing in the national economy.  *See* 20 C.F.R. §§

404.1520(g), 404.1560(g), 416.920(g); *see also White v. Sec'y of Health &*

*Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990).  In making this

determination, the ALJ must consider the claimant's residual functional capacity (RFC), age, education, past work experience, and transferability of skills.  *See* 20 C.F.R. §§ 404.1520(g), 404.1560, 416.920(g); *see also Butts v. Barnhart*, 388 F.3d 377, 381 (2d Cir. 2004).  Additionally, the ALJ may rely on a VE's testimony regarding the existence of jobs the claimant can perform in the national economy.  *See Butts*, 388 F.3d at 384.

There must be "substantial record evidence to support the [hypothetical] upon which the vocational expert based his opinion." *Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983).  Accordingly, "[a] hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony." *Dickson v. Astrue*, No. 1:06-CV-511, 2008 WL 4287389, at *15 (N.D.N.Y. Sept. 17, 2008) (citing, *inter alia*, *De Leon v. Sec'y of Health & Human Servs.*, 734 F.2d 930, 936 (2d Cir.1984)).  Thus, where the ALJ's hypothetical question leaves out any of the claimant's impairments or limitations, "a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Id.* at *15 (citation omitted).

In questioning the VE here, the ALJ's hypotheticals accurately

reflected his RFC assessment, which was supported by substantial evidence.  Specifically, after discussing Pardoe's past work with the VE, the ALJ preliminarily asked the VE whether Pardoe could perform his past work, which the VE answered in the negative.  (Tr. at 318-19.)  Then, the ALJ asked whether any jobs exist in the national economy for a person who is capable of performing light work but is unable to reach overhead with both arms and must avoid temperature extremes.  (Tr. at 319.)  Next, the ALJ asked whether there are any jobs for a person who can perform at the sedentary level with a capacity to stand or walk ten minutes at a time and only lift up to five pounds.  (*See id.*)  To these questions, the VE provided a detailed description of several positions in the national, state, and local economies that fully corresponded with Pardoe's age, education, work experience, RFC, and other restrictions and limitations.  (*See id.*)

The ALJ's hypothetical questions, which were both comprehensive and germane, provided a sound basis for the VE's testimony.  *See Dickson*, 2008 WL 4287389, at *15.  Therefore, for these reasons and those discussed by the Commissioner, (*see* Def. Br. at 17-20, Dkt. No. 12), the VE's responses constituted substantial evidence upon which the ALJ could rely in finding that there are a significant number of jobs in the

national economy that Pardoe could perform.

**4.    New Evidence**

Lastly, Pardoe argues that the post-hearing medical evidence regarding his heart attack, depression, and neck problems should have led the Appeals Council to reverse the ALJ's decision and remand the case to the ALJ for findings consistent with the new evidence.  (*See* Pl. Br. at 13-15, Dkt. No. 11.)  This argument is without merit.

Generally, "new evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review" as long as the evidence is "new and material and ... relate[s] to the period on or before the ALJ's decision."  *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996).  Then, the Appeals Council must "evaluate the entire record including the new and material evidence submitted ... [and] review the case if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record."  20 C.F.R. § 404.970(b); *see also Bartlett v. Chater*, 104 F.3d 350, at *3 (2d Cir. 1996) (unpublished) (finding remand unwarranted where new evidence did not render ALJ's decision erroneous).  "New evidence is 'material' if it is both (1) relevant to the claimant's condition during the time period for which benefits were

denied and (2) probative." *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004) (internal quotation marks and citation omitted). Accordingly, there must be "a reasonable possibility that the new evidence would have influenced the Commissioner to decide claimant's application differently." *Id.* (internal quotation marks and citation omitted). And "[w]hen the Appeals Council denies review after considering new evidence, [courts] simply review the entire administrative record, which includes the new evidence, and determine, as in every case, whether there is substantial evidence to support the decision of the [Commissioner]." *Perez*, 77 F.3d at 46.

Here, the Appeals Council considered the new evidence but still denied review, finding that the ALJ's decision was supported by substantial evidence despite the new evidence. (Tr. at 5.) The court concurs with the Appeals Council and finds that the total weight of the evidence supports the ALJ's determinations.

## VI. <u>Conclusion</u>

After careful review of the record, the court finds that the remainder of the ALJ's decision is supported by substantial evidence.

**WHEREFORE**, for the foregoing reasons, it is hereby

17

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and

Pardoe's complaint is **DISMISSED**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

June 14, 2010
Albany, New York

United States District Court Judge